# Hollenback *versus* Clapp.
# Clapp *versus* Hollenback.

A. died, leaving unsettled several transactions whereby cross claims existed between himself and B. His executors executed a writing with reference to two claims of B., purporting to be a receipt by them of $1,500 from B., in consideration of his assignment to them of a contract of A. for the sale to him of certain real estate, and of $2,500 in consideration of services rendered by B. to A., agreeing to account for the above sums, amounting to $4,000, "to be allowed said B. on a final and complete settlement of account hereafter to be made between B. and the executors of A." The contract for the sale of land referred to was in writing, but not recorded, and the land in question had been conveyed by A. during his life to other parties. It appeared by extrinsic evidence that in point of fact no money was received by the executors as set forth in the writing, the sums mentioned being merely the liquidation agreed upon by way of compromise of the respective claims. There was no evidence that the executors, personally, had received any benefit from the assignment

[Hollenback *v.* Clapp.]

of the contract for real estate. A settlement of the other accounts between A. and B. was made some years afterwards between B. and A.'s administrator, who had been substituted for the executors aforesaid, and a balance being found to be due from B. to A., it was credited upon the $2,500 agreed upon by the writing in question. A.'s estate proved to be insolvent, whereupon B. brought suit against the executors, seeking to hold them personally liable upon the agreement for the full amount therein mentioned.

*Held,* that the rule that the promise of an executor to pay money on a contract made by him imposes a personal liability did not apply, and it was error to leave the question whether defendants, personally, derived any benefit from the assignment, to the jury.

March 16th 1883. Before Gordon, Paxson, Trunkey, Sterrett, and Green, JJ. Mercur, C. J., did not sit. Clark, J., absent.

Writs of error to the Court of Common Pleas of *Bradford county:* Of July Term 1882, No. 57, and January Term 1883, No. 196.

Debt, by C. W. Clapp against John Welles Hollenbach and John C. Welles, the former of whom alone was served, upon an instrument of writing, of which the following is a copy.

"Received, Athens, Pa., October 25th 1873, of C. W. Clapp, fifteen hundred dollars ($1,500), the consideration of his assignment of all his right, title and interest in and to a contract dated March 1st 1870, between C. F. Welles, C. W. Clapp and John C. Welles, for the sale of lots in the Satterlee and Mile Hill plots; and, also, the sum of twenty-five hundred dollars ($2,500), in consideration of the services of every name and nature rendered by him to C. F. Welles, deceased, in and during the years 1866, 1867, 1868, 1869 and 1870; and the undersigned executors agree to account for the above sums, amounting to four thousand dollars ($4,000), to be allowed to said Clapp, in a full and complete settlement of accounts hereafter to be made between said Clapp and the executors of the estate of C. F. Welles, deceased.

John C. Welles, [Seal.] ⎱ "Executors of C. F.
J. W. Hollenback, [Seal.] ⎰ Welles, deceased.
" Witness: A. P. Wolcott."

Pleas nil debet, payment with leave, &c.

On the trial, before Morrow, P. J., the following facts appeared: Charles F. Welles died in 1872, having by his will appointed John Welles Hollenback and John C. Welles his executors. Among the claims against his estate was an unsettled account between himself and C. W. Clapp, covering several transactions, and among others the two claims recited in the agreement sued on. Decedent had counter-claims against

[Hollenback *v.* Clapp.]

Clapp, and the executors, being unable to adjust the respective claims at that time, made the agreement in question. The contract for the sale of land was unrecorded, and the land in question had all been conveyed by Welles during his lifetime to other parties. No money was actually received by the executors from Clapp, the sums mentioned being merely the valuations agreed on by way of compromise. Subsequently the executors were removed, and James Webb was appointed administrator d. b. n. c. t. a., in their stead. A settlement was afterwards had between Webb and Clapp upon the other accounts, and a balance of $942.42, being found due by Clapp to the estate, it was credited on the $2,500 recited in the agreement in suit. Welles's estate proving insolvent, Clapp brought this suit against Hollenback and Welles, seeking to hold them individually liable on the agreement.

The defendant submitted the following point : " That upon the whole evidence the plaintiff is not entitled to recover."

Answer. We refuse to charge you that there can be no recovery in the case, but we have submitted certain questions of fact for you to find, and as you find these facts you will determine your verdict. We refuse to say that the plaintiff cannot recover.

The court charged the jury, inter alia, as follows :

You understand that this suit is against John Welles Hollenback, to make him personally liable for this four thousand dollars, with interest, from the time of the final settlement, when the right of action accrued. They seek to make Hollenback personally liable for what he did as executor of Charles F. Welles. [There is no question that where a man settles a claim as executor, and gives his promise to pay that, and signs it as executor, and thinks he is binding the estate and not himself personally—there is no question but what he has bound himself to pay it. That is a general rule, and undisputed.] But the agreement here is not a promise to pay expressly. They agree to account for four thousand dollars, " to be allowed Clapp in a full and complete settlement of accounts hereafter to be made between said Clapp and the executors of the estate." That is, a full and complete settlement of accounts between the estate and Clapp. It is what they agreed to do ; and, so far as the $2,500 is concerned, I think there is no question that there can be no recovery upon the agreement ; because Webb succeeded them as administrator c. t. a. d. b. n., and they made a final adjustment and settlement March 29th 1880, and this suit was brought on the 10th of March, 1880 ; and this agreement provides that they agreed to account when there was a full and complete settlement made. When Webb made that settlement there was $942.42 to apply, and Webb did apply it upon this

item contained in the agreement. So that leaves for consideration only the amount of $1,500. [He sold the land to them, and they agreed to account to him for $1,500. If they bought the land personally, or if they had the personal benefit of the land, there would be no question, I think, about the agreement, and they couldn't apply it on this account. But if he had a claim against the estate on account of the land, a much greater amount than the $1,500, and the executors, for the benefit of the estate, in good faith settled it for $1,500, and they gave him this receipt, and agreed to account to him for $1,500, I think they had authority to do it, and no creditor could complain, provided you find that the estate had the benefit of Clapp's interest in the land.] On the part of the plaintiff, it is argued that John C. Welles and Edward Welles had the benefit of it, and that the estate did not. But I have already said that Welles having conveyed away the land in the way he did, it was a breach of that contract, and Clapp had a claim against the estate, and while he might have followed the land, he could hold it against the estate, and if it was several thousand dollars, and they settled it for $1,500, was not that for the benefit of the estate? [If the estate had the benefit, in my judgment, this contract required them, only on a final and complete settlement, to apply this $2,500 and this $1,500 upon whatever Clapp might be owing the estate. If it turned out that the estate owed him, then he would be entitled to recover out of the estate the $1,500 and the $2,500. The estate was insolvent. Whether it was known at that time, the evidence does not disclose. Welles died October 9, 1872. This settlement was made in October, 1873. Whether it was known that the estate was insolvent then or not, is not shown by the evidence. It seems that it is insolvent, and the result is that Clapp has got of this $4,000 on the final settlement, only $942.47. But that would not change the matter of the construction of this contract. It reads: " The undersigned executors, are to account for the above sums, amounting to four thousand dollars, to be allowed to said Clapp in a full and complete settlement of accounts." We think, therefore, that Clapp cannot recover anything in this case, provided the jury find that this $1,500 was for a settlement of the claim which he asserted against the estate, that the settlement was accomplished by the executors in good faith, that the estate had the benefit of the settlement; under the agreement of the parties; under such circumstances, all the executors had to do was, in the final and complete settlement, to allow him for these sums as agreed in this contract. If you do not find these facts as stated, the plaintiff would be entitled to recover $1,500, with interest, from the time of the settlement—two years and a month, lacking four days.

[Hollenback *v.* Clapp.]

By Mr. Patrick: It should be for the exclusive benefit of the estate, should it not?

By the Court: Certainly; I mean that; that nobody else should have been benefited by the settlement; that it was for the exclusive benefit of the estate; and it is for the jury to say, under the circumstances, whether that was or was not the purpose of the settlement. If Clapp had a large claim of three or four thousand dollars, and they settled it for fifteen hundred dollars, and he had an interest in the land and could have enforced breach of contract and have recovered damages against the estate, would it not be for the exclusive benefit of the estate, if they settled a claim of several thousand dollars for fifteen hundred dollars?]

Verdict and judgment for the plaintiff for $1,687.50. Both parties took writs of error; the plaintiff Clapp, assigning for error the portions of the charge above quoted within brackets, and the defendant, Hollenback, assigning for error, inter alia, that portion of the charge following the first portion above quoted within brackets.

The two cases were argued together.

*J. V. Darling* and *Davies & Hall* (with them *Peck & Overton*), for Hollenback.

*Overton & Sanderson* (with them *Patrick & Foyle*), for Clapp.

Mr. Justice GREEN delivered the opinions of the court, May 25th, 1883.

## HOLLENBACK *v.* CLAPP.

The paper of October 25th 1873, was certainly a very awkward and inartistic contrivance for expressing the actual results of the transaction, which it was intended to represent. Down to the concluding paragraph it purports in terms, to express the fact that the executors of C. F. Welles had received from C. W. Clapp an assignment of his interest in a contract between C. F. Welles, C. W. Clapp and John C. Welles, and also the sum of $1,500, being the consideration of the assignment, and in addition to this it purports that the executors had received from Clapp the further sum of $2,500 for services which Clapp had rendered to C. F. Welles during his life. Apparently it would seem from this language that Clapp having a claim for $1,500 arising under a contract with the decedent and another, and also a claim for $2,500, for services rendered to the decedent, had actually paid these sums to the executors, although he was manifestly entitled to receive them from those persons. The instrument is so anomalous, that it is unintelligible with-

[Hollenback *v.* Clapp.]

out the help of extrinsic evidence. The concluding paragraph affords some, though not complete, explanation of the true meaning of the parties. It does not explain, what was admitted and proved by the plaintiff himself on the trial, that in point of fact the executors received no money whatever, though they acknowledged under seal that they had received the whole sum of $4,000, and it does not express the other equally important and undisputed fact, that the sums mentioned represented merely the valuations agreed upon by way of compromise of the plaintiff's claims. Had these parties all died before this suit was brought, it is difficult to understand how the estate of the defendants could have escaped payment of the whole of this money in the litigation which would almost certainly result from the execution of such an instrument. With the help, however, of the verbal testimony of the parties and the concluding paragraph of the paper, it is not difficult to determine the rights of the litigants. It is unnecessary to consider the force of the authorities cited for the plaintiff to the effect that a promise by an executor to pay money upon a contract made by him, imposes a personal liability, although he annexes his official title to his signature. They establish a perfectly familiar rule, which, if it were applicable to the facts of this case, would suffice to impose a personal obligation upon these executors. But the clearly established facts of the case demonstrate, in our judgment, that the rule is not applicable. The final clause of the paper certainly imports that the whole sum of $4,000 was merely to be allowed as a credit to the plaintiff "in a full and complete settlement of accounts," thereafter to be made. That settlement was to be made, not necessarily by these two defendants, either as executors or as individuals, but "between said Clapp and the executors of the estate of C. F. Welles, deceased." That is, whenever the final settlement should be made between Clapp and the persons who might then be the legal representatives of the estate of Welles, the sum of $4,000, or rather, "the above sums, amounting to $4,000," shall "be allowed to said Clapp." We think it very clear that it was the intent of the parties that the two sums should be treated exactly alike in the contemplated future settlement. They were classified together, and being aggregated, the sum of the two was to be accounted for, and "allowed to" Clapp in the settlement. It is explained in the verbal testimony that Clapp had claims against Welles of a considerable amount, and Welles had claims against Clapp, and for some reasons these conflicting claims could not then be all adjusted. These two claims of Clapp's were in dispute as to their amount, and finally it was agreed that the sum of $1,500 and $2,500 should be the true amounts, which should be ultimately allowed for them. There

7 OUTERBRIDGE.— 5

[Hollenback *v.* Clapp.]

is no stipulation anywhere in the instrument that the defendants, either as executors or as individuals, should pay in money, either of these sums.    An argument has been made to found a liability to pay upon the fact that there was an assignment of Clapp's interest in the contract of March 1st 1870, to the executors, and that they personally received the benefit of that assignment.    The learned Judge of the court below, with manifest reluctance, left that question as a fact to the jury.    But in this we think he was clearly in error, partly for the reasons already stated, and still more because there was no evidence that the executors either did or could receive any personal benefit from the assignment.    It was made to them in their official capacity solely, and as the land mentioned in the contract had all been conveyed by Col. Welles in his life-time, and the contract was unrecorded, the plaintiff's claim was really only a claim for damages for breach of contract.    By the adjustment and agreement of the parties these damages were virtually fixed at $1,500, and that sum was "to be allowed to said Clapp" in the full and complete settlement which was to be subsequently made between "said Clapp and the executors of the estate of C. F. Welles, deceased."    In point of fact such a settlement was made nearly seven years later, in March 1880, between Clapp and James H. Webb, who succeeded the defendants in the administration of the estate of Welles, and upon the other accounts between Clapp and Welles, a balance of $942.42 being found due from Clapp, the same was credited upon one of the sums agreed upon by the paper of October 25th 1873.    The assignment of Clapp's interest in the contract of March 1st 1870, was made to the defendants as executors, and simply operated to extinguish the plaintiff's claim against the estate founded upon that contract, and substituted for it a sum of money which was to be allowed to Clapp in a future and full settlement to be made between him and the executors of Welles.    In no possible way could the defendants as individuals take any interest in that contract.    The law would forbid it as a violation of their trust, if any such attempt were ever made.    But as the land had already been conveyed by Welles before his death, there was nothing upon which the assignment of Clapp's interest could operate.    The learned court was therefore in error in submitting this question to the jury, and in holding that the defendants might be personally liable on account of the assignment.

Judgment reversed.

[Quick v. Miller.]

CLAPP v. HOLLENBACK.

For the reasons stated in the opinion just filed in the case of Hollenback & Wells v. Clapp, the judgment in this case is affirmed.